## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as a representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY<br><br>     Debtor.[1]<br>_____ | PROMESA<br>Title III<br><br>Case No. 17-BK-3567-LTS<br>(Jointly Administered) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS,<br><br>     and<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA),<br><br>     as section 926 trustee of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY<br><br>     Plaintiffs,[2]<br>v.<br><br>BANCO POPULAR DE PUERTO RICO AS TRUSTEE FOR POPULAR BALANCED IRA TRUST FUND; BANCO POPULAR DE PUERTO | Adv. Proc. No. 19-_____-LTS<br><br>PROMESA<br>Title III |

---

[1] The last four (4) digits of the Debtor's federal tax identification number are 3808.

[2] The Official Committee of Unsecured Creditors serves as section 926 trustee and co-plaintiff in the prosecution of this adversary proceeding pursuant to that certain *Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Causes Of Action of Puerto Rico Highways and Transportation Authority and Employees Retirement System of the Government of the Commonwealth of Puerto Rico*, Case No. 17-BK-3283 (LTS), ECF No. 6990, which is incorporated herein by reference.

RICO, AS TRUSTEE; BRIGADE CAPITAL
MANAGEMENT, LP; CANYON CAPITAL
ADVISORS LLC; GOLDENTREE ASSET
MANAGEMENT LP; KNIGHTHEAD CAPITAL
MANAGEMENT, LLC; OPPENHEIMERFUNDS,
INC.; POPULAR HIGH GRADE FIXED INCOME
FUND, INC.; POPULAR INCOME PLUS FUND,
INC.; SANTANDER ASSET MANAGEMENT,
LLC; TACONIC CAPITAL ADVISORS L.P.;
TACONIC MASTER FUND 1.5 L.P.; TACONIC
OPPORTUNITY MASTER FUND L.P.

Defendants.

**COMPLAINT PURSUANT TO BANKRUPTCY CODE SECTIONS 502(a),
544, 550, 551, AND 552 AND BANKRUPTCY RULES 3007 AND 7001 OBJECTING TO
AND CHALLENGING VALIDITY, ENFORCEABILITY, AND EXTENT OF
PREPETITION SECURITY INTERESTS AND SEEKING OTHER RELIEF**

Pursuant to (i) Federal Rules of Bankruptcy Procedure 7001(1), (2) and (9), made applicable to these Title III cases by section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act (48 U.S.C. § 2170) ("PROMESA"),[3] and (ii) the *Stipulation and Agreed Order By and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Causes of Action of Puerto Rico Highways and Transportation Authority and Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [ECF No. 6990], the Puerto Rico Highways and Transportation Authority ("HTA" or the "Debtor"), by and through (i) the Special Claims Committee (the "SCC") of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtor's representative pursuant to section 315(b) of PROMESA, and (ii) the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee" and, together with HTA and the SCC, the "Plaintiffs"), as section 926 trustee

---

[3]  PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

2

and co-plaintiff pursuant to the Stipulation, in each case by and through undersigned counsel, allege as follows for their complaint ("Complaint")[4] against Defendants,[5] as fiscal agents, holders and/or insurers of bonds issued by HTA (the "Bonds") pursuant to both (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution,"[6] and the Bonds issued thereunder, the "1968 Bonds"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution,"[7] and the Bonds issued thereunder, the "1998 Bonds,"[8] and the 1968 Bonds together with the 1998 Bonds, the "Bonds"):

## NATURE OF ACTION

1.      This proceeding arises out of a dispute between HTA and Defendants regarding the extent and enforceability of certain security interests in HTA's Revenues (as defined below).  The dispute revolves around two misplaced assertions of Defendants.  First, Defendants have asserted (in their proofs of claim, among other places) security interests extending beyond Revenues deposited with the Bank of New York Mellon (the "Fiscal Agent"), the fiscal agent for the Bonds, in certain accounts established and held by the Fiscal Agent under the 1968 Resolution and the 1998 Resolution (both together, the "Resolutions"), and have claimed instead that holders of 1968 Bonds ("1968 Bondholders") and holders of 1998 Bonds ("1998 Bondholders," and together with the 1968 Bondholders, "Bondholders") are holders or beneficiaries of security interests in Revenues (including Revenues deposited in accounts not held by the Fiscal Agent) and in HTA's *right to receive* Revenues.  Second, Defendants have asserted (in their proofs of claim, among

---

[4]   Plaintiffs reserve their right to raise additional objections or commence additional avoidance actions on any basis to Bond claims.

[5]   Defendants in this action are listed on **Exhibit A**, attached hereto (collectively, "Defendants").

[6]   A copy of the 1968 Resolution is attached hereto as **Exhibit B**.

[7]   A copy of the 1998 Resolution is attached hereto as **Exhibit C**.

[8]   Reference in this Complaint to 1998 Bonds or 1998 Bondholders includes any subordinated bonds issued by HTA pursuant to the 1998 Resolution, including under Resolution No. 98-31.

other places) that such purported security interests in HTA's right (if any) to receive Revenues
(including certain tax and fee revenues conditionally allocated to HTA by the Commonwealth, as
well as Toll Revenues (as defined below)) is enforceable and perfected, and continues to attach as
HTA receives those Revenues postpetition.

2.      Defendants' assertions are incorrect for several reasons.  <u>First, the Resolutions
granted security interests (if it granted any) only in Revenues that have been both *received* by HTA
and *deposited* in certain accounts held by the Fiscal Agent</u>.  The Resolutions do not grant
Defendants a security interest in Revenues or in any right of HTA to receive Revenues (or in any
accounts not held by the Fiscal Agent).  The various provisions of both Resolutions and the HTA
Enabling Act make clear Defendants' security interests in Revenues—if any exist at all—are
limited to Revenues "received" by HTA,[9] and then "deposited" in specified accounts held by the
Fiscal Agent.[10]  Therefore, HTA is entitled to a declaration that Defendants do not possess a
security interest in anything beyond Revenues both received by HTA and deposited in accounts
held by the Fiscal Agent.

3.      <u>Second, even if the Resolutions granted security interests in (*i*) deposit accounts not
held by the Fiscal Agent and (*ii*) HTA's rights (if any) to receive Revenues, such security interests
were never perfected</u>.  Under Article 9 of the Uniform Commercial Code ("<u>UCC</u>") as adopted by
Puerto Rico, the *only* way to perfect a security interest in a deposit account is by "control."  19
L.P.R.A. § 2262(b)(1).  The only accounts Defendants have "control" of are the accounts held by
the Fiscal Agent—no others.  As a result, HTA is entitled to (i) a declaration that HTA's interests
in deposit accounts not "controlled" by the Fiscal Agent have priority over Defendants' purported

---

[9]   *See* 1968 Resolution § 601; 1998 Resolution § 601.
[10]  *See* 1968 Resolution § 401; 1998 Resolution § 401.

security interests in those deposit accounts under Puerto Rico law, and (ii) judgments avoiding and preserving for HTA any such security interests of Defendants pursuant to Bankruptcy Code sections 544 and 551.  Similarly, any security interests in HTA's right (if any) to receive Revenues are unperfected and unenforceable.  Under Article 9, the only way to perfect such a security interest is to file a financing statement identifying "HTA's right to receive Revenues" as collateral.  None of the financing statements for the 1968 Bonds or the 1998 Bonds identify any such "right to receive Revenues" as collateral (if that concept is even cognizable).  As a result, HTA is entitled to (i) a declaration that HTA's interests in its right (if any) to receive Revenues are entitled to priority over Defendants' purported security interests in any such right under Puerto Rico law, and (ii) judgments avoiding and preserving for HTA any security interests of Defendants in HTA's right (if any) to receive Revenues, pursuant to Bankruptcy Code sections 544 and 551.

4.      Third, any purported security interests in HTA's right (if any) to receive HTA Allocable Revenues (as defined below) are no longer enforceable, as any rights HTA had to receive such Revenues have been preempted.[11]  Pursuant to PROMESA sections 201 and 202, the Oversight Board is granted the power to formulate and certify fiscal plans and budgets, and the Oversight Board has formulated and certified fiscal plans and budgets, that provide for the appropriation of the various excise tax and fee revenues of the Commonwealth of Puerto Rico (the "Commonwealth") that were previously conditionally allocated to HTA under Puerto Rico statutes, as detailed below (the "HTA Allocable Revenues").[12]  Accordingly, such statutory

---

[11]   Co-plaintiff the Committee does not join in Count IX, the related prayer for relief, and any assertion or statement in support of such Counts, including paragraph 4 and paragraphs 63 through 78 hereof.

[12]   See 13 L.P.R.A. § 31626 (Excises Taxes); 13 L.P.R.A. § 31627 (Excise Taxes); 13 L.P.R.A. § 31751(a)(1)(E) (conditionally allocating Excise Taxes to HTA); 13 L.P.R.A. § 31625 (Cigarette Excise Taxes); 13 L.P.R.A. § 31751(a)(4) (conditionally allocating Cigarette Excise Taxes to HTA); Act 22-2000 (Vehicle Fees); 9 L.P.R.A. § 2021 (conditionally allocating Vehicle Fees to HTA).

allocations of the HTA Allocable Revenues to HTA are preempted by PROMESA.  As HTA no longer has rights (if it ever had any) to receive the HTA Allocable Revenues, any security interest in those rights has been eliminated, and HTA is entitled to a declaratory judgment to that effect.

5.    <u>Fourth, even if Defendants held perfected security interests in all of HTA's Revenues and HTA's right (if any) to receive such Revenues (they do not), such security interests cannot attach to any of the Revenues acquired postpetition due to Bankruptcy Code section 552(a).</u> Pursuant to Bankruptcy Code section 552(a), "property acquired by the estate or by the debtor after the commencement of the case is not subject to any security interest resulting from any security agreement entered into by the debtor before the commencement of the case."  11 U.S.C. § 552(a). As a result, any security interest Defendants might otherwise hold in Revenues or HTA's right to receive Revenues stopped attaching to such property on the Petition Date, and HTA is entitled to a declaratory judgment to that effect.

## **PARTIES**

6.    HTA is a public corporation established by the Commonwealth Legislature pursuant to Act No. 74-1965 (as amended, the "<u>Enabling Act</u>").  The Enabling Act is codified in Puerto Rico law as 9 L.P.R.A. §§ 2001–2035.  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.

7.    Co-Plaintiff the Oversight Board is an entity within the Commonwealth government established pursuant to PROMESA that serves as HTA's sole representative in its Title III case, pursuant to PROMESA section 315(b).

8.    Co-Plaintiff the Committee is the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA).  The Committee was appointed by the United States

Trustee on June 15, 2017.  The Committee is not acting as plaintiff with respect to the claims asserted herein against the Government Development Bank for Puerto Rico.

9.      Defendants are (i) the Fiscal Agent and (ii) holders and/or insurers of Bonds that have filed claims against HTA asserting their Bond claims are entitled to secured status in HTA's Title III case.

10.     Defendants' names, the proof of claim numbers for their Bond claims, and their addresses are listed in **Exhibit A**, attached hereto.

### JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this adversary proceeding pursuant to PROMESA section 306, because this adversary proceeding arises under PROMESA Title III, in a Title III case, and relates to HTA's underlying PROMESA Title III case.

12.     This Court has personal jurisdiction over each Defendant pursuant to PROMESA section 306(c).

13.     Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. § 1391, because all or a substantial part of the events giving rise to HTA's claims occurred in this District.  Venue is also proper under PROMESA section 307, because this adversary proceeding is brought in a PROMESA Title III case.

14.     This adversary proceeding is brought pursuant to (*a*) Rules 3007, 7001(1), (2) and (9) of the Federal Rules of Bankruptcy Procedure, made applicable to this proceeding pursuant to PROMESA section 310, and (*b*) Bankruptcy Code sections 502(a), 544(a), 550, 551, and 552, made applicable to this proceeding pursuant to PROMESA section 301(a).  This is an appropriate action for declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  There currently exists an actual, justiciable controversy between the parties regarding the

validity, priority, extent, and enforceability of the security interests asserted by Defendants in certain of HTA's property.

## FACTS

### I.      HTA and the HTA Bonds

15.      HTA is a public corporation created by the Enabling Act and responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.

16.      Pursuant to the Enabling Act, HTA is authorized to issue bonds and to secure their repayment by granting a security interest in certain of its revenues, among other things.  *See* 9 L.P.R.A. § 2004(l).

17.      Pursuant to this authority, HTA issued several series of Bonds governed by two different Resolutions: the 1968 Resolution and the 1998 Resolution.  These instruments contain detailed provisions governing the issuance and redemption of the Bonds, the pledge of any collateral for the Bonds, the use of Bond proceeds, and the application of certain revenues received by HTA.

#### a.  1968 Bonds

18.      The 1968 Resolution contemplates the 1968 Bonds would be secured by certain revenues of HTA ("1968 HTA Revenues") deposited with the Fiscal Agent in a special fund created and designated by the 1968 Resolution as the "Sinking Fund" and required by the 1968 Resolution to be held by the Fiscal Agent.  Specifically, section 601 of the 1968 Resolution provides, in relevant part:

> Except as in this Resolution otherwise provided, the principal, interest and premiums [on the 1968 Bonds] are payable *solely from Revenues and from any funds received* by the Authority for that purpose from the Commonwealth *which Revenues and funds are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified.*

1968 Resolution § 601 (emphasis added).  Notably, section 601 limits the pledge in two ways: (*i*)

by restricting it to Revenues and other funds (if any) "received" by HTA, and (*ii*) by qualifying it

"to the extent hereinabove particularly specified."  1968 Resolution § 601.

19.     The term "Revenues" is defined as follows:

The word "Revenues" shall mean (a) all moneys received by the Authority on
account of gasoline tax allocated to the Authority by Act No. 75, approved June 23,
1965; (b) Toll Revenues; (c) the proceeds of any other taxes, fees or charges which
the Legislature of Puerto Rico has allocated or may hereafter allocate to the
Authority and expressly authorize the Authority to pledge to the payment of the
principal of and interest on Bonds or other obligations of the Authority and which
are pledged by the Authority to the payment of the principal and interest on Bonds
or other obligations issued under the provisions of this Resolution; provided that
written notice of such pledge has been delivered to Standard & Poor's Corporation,
Moody's Investors Service, Inc. and any other rating agency then rating the bonds;
and (d) investment earnings on deposit to the credit of the funds and accounts
established hereunder, except for the Construction Fund.

*Id.* at § 101 (at 11).

20.     The term "Toll Revenues" is defined as:

The term "Toll Revenues" shall mean the tolls or other charges, if any, imposed by
the Authority for the use of any of its Traffic Facilities.

*Id.* at § 101 (at 12).

21. The term "Traffic Facilities" is defined as:

The term "Traffic Facilities" shall mean any of [enumerated types of] facilities for
which bonds or other obligations shall be issued by [HTA] under the provisions of
this Resolution the cost of which facilities paid from the proceeds of such bonds
or other obligations shall not have been reimbursed to [HTA] from funds not
encumbered by this Resolution.

*Id.* § 101 (at 12-13).

22.     Section 401 "particularly specifies" the manner and extent to which the 1968 HTA

Revenues and other funds (if any) allegedly secure the payment of the 1968 Bonds.  Specifically,

section 401 provides that "all of the Revenues (other than investment earnings on deposit to the

9

credit of funds and accounts established hereunder), and any other funds of the Commonwealth

allocated to [HTA] for the payment of principal and interest on bonds of [HTA] . . . *which it*

*receives will be deposited monthly with the Fiscal Agent . . . .*" into the various accounts that make

up the Sinking Fund.  1968 Resolution § 401 (emphasis added).

      23.    As made clear by section 401, it is only the moneys in the Sinking Fund which are

allegedly subject to a security interest for the benefit of the 1968 Bondholders:

> A special fund is hereby created and designated "Puerto Rico
> Highway Authority Highway Revenue Bonds Interest and Sinking
> Fund" (herein sometimes called the "Sinking Fund").  There are
> hereby created in the Sinking Fund three separate accounts
> designated "Bond Service Account", "Redemption Account" and
> "Reserve Account", respectively.
>
> *The moneys in said Funds and Accounts shall be held by the Fiscal
> Agent in trust*[13] and applied as hereinafter provided with regard to
> each such Fund and Account and, pending such application, *shall be
> subject to a lien and charge in favor of the holders of the bonds*
> issued and outstanding under this Resolution and for the further
> security of such holders until paid out or transferred as herein
> provided.

1968 Resolution § 401.

      24.    The 1968 Resolution granted 1968 Bondholders a security interest in only those

Revenues that are both received by HTA and deposited in the Sinking Fund held by the Fiscal

Agent.  The 1968 Resolution lacks any language granting a security interest in HTA's *right (if*

*any) to receive* 1968 HTA Revenues, or in accounts not held by the Fiscal Agent (or funds

deposited to the credit of accounts not held by the Fiscal Agent).  In fact, every reference to the

granting of a security interest in the revenues limits the security interest to moneys HTA *received*,

---

[13] Provisions purportedly providing that funds are to be held "in trust" in these circumstances amount to no more than
an attempt to create a security interest in whatever is held "in trust."  Such purported security interest is subject to
the usual UCC perfection (and other) rules applicable to security interests.

moneys *held* by the Fiscal Agent and moneys *deposited* in the relevant HTA account. *See id.* §§
401, 406 (referring to "moneys held" in the accounts in the Sinking Fund as pledged to 1968
Bonds), 407 (referring to moneys withdrawn from the Sinking Fund for the payment of particular
1968 Bonds after having been deposited in the Sinking Fund as subject to a property interest in
favor of the holders of those 1968 Bonds), 501 (stating "moneys deposited with the Fiscal Agent
under the provisions of this Resolution shall be held in trust").

25.     The scope of the collateral in which security interests are granted to the 1968
Bondholders is limited to 1968 HTA Revenues both "received" by HTA and "deposited" with the
Fiscal Agent.

### b. 1998 Bonds

26.     Similar to the 1968 Resolution, the 1998 Resolution contemplates the 1998 Bonds
would be secured by certain revenues of HTA ("1998 HTA Revenues," and together with the 1968
HTA Revenues, the "Revenues") deposited with the Fiscal Agent in a special fund created and
designated by the 1998 Resolution as the "Revenue Fund" and required by the 1998 Resolution to
be held by the Fiscal Agent.  Specifically, section 601 of the 1998 Resolution provides, in relevant
part:

> Except as in this Resolution otherwise provided, such principal, interest and
> premiums [on the 1998 Bonds] are payable *solely from Revenues and other moneys*
> *deposited to the credit of the Revenue Fund and from any funds received by the*
> *Authority for that purpose from the Commonwealth, which Revenues, moneys and*
> *funds are hereby pledged* (with such priorities with respect to the use and
> disposition of Revenues as are in this Resolution specified) to the payment thereof
> *in the manner and to the extent hereinabove particularly specified.*

1998 Resolution § 601 (emphasis added).  Notably, section 601 limits the pledge in two
ways: (*i*) by restricting it to Revenues "deposited" in the Revenue Fund and other funds
"received" by HTA from the Commonwealth, and (*ii*) by qualifying it "to the extent
hereinabove particularly specified."  1998 Resolution § 601.

27.    The term "Revenues" is defined by the 1998 Resolution as follows:

The word "Revenues" shall mean all moneys received by the Authority on account of the crude oil tax allocated to the Authority by Act No. 34, approved July 16, 1997, as amended, all Existing Tax and Fee Revenues upon the repeal and cancellation of the 1968 Resolution, any tolls or other charges imposed by the Authority for the use of any of the Toll Facilities other than Existing Toll Facilities Revenues received by the Authority prior to the repeal and cancellation of the 1968 Resolution, the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may hereafter allocate to the Authority and expressly authorize the Authority to pledge to the payment of the principal of and interest on bonds or other obligations of the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of this Resolution, and investment earnings on deposits to the credit of funds and accounts established hereunder, except for the Construction Fund.

*Id*. § 101 (at 13).

28.    The term "Toll Facilities" is defined by the 1998 Resolution as follows:

The term "Toll Facilities" shall mean any Traffic Facilities for the use of which [HTA] imposes tolls.

*Id.* § 101 (at 15).

29.    The term "Existing Toll Facilities Revenues" is defined by the 1998 Resolution as

follows:

The term "Existing Toll Facilities Revenues" shall mean the tolls or other charges imposed by [HTA] for the use of any Traffic Facilities financed in whole or in part by the issuance of 1968 Resolution Bonds, including any extensions, betterments or improvements to such Facilities added after the issuance of bonds under the provisions of Section 207 of this Resolution however financed or  paid for.

*Id.* § 101 (at 7).

30.    The term "Traffic Facilities" is defined by the 1998 Resolution as follows:

The term "Traffic Facilities" shall mean any of [enumerated types of] facilities for which 1968 Resolution Bonds or bonds or other obligations shall be issued by [HTA] under the provisions of this Resolution the cost of which facilities paid from the proceeds of such bonds or other obligations shall not have been reimbursed to [HTA] from funds not encumbered by this Resolution or the 1968 Resolution.

31.     Section 401 "particularly specifies" the manner and extent to which the 1998 HTA Revenues and other funds (if any) allegedly secure the payment of the 1998 Bonds. Specifically, section 401 provides for the creation of the Revenue Fund and sinking funds and accounts in such sinking funds (the "<u>1998 Sinking Funds</u>") for the payment, or the provision for payment, of 1998 Bonds (with segregated funds and accounts for senior 1998 Bonds and subordinate 1998 Bonds), and then states that "all Revenues (except investment earnings [on] deposits to the credit of funds and accounts established hereunder) *will be deposited when received to the credit of the Revenue Fund*." 1998 Resolution § 401 (emphasis added). Section 401 requires the monthly transfer from the Revenue Fund to the 1998 Sinking Funds (and the accounts therein) of all moneys then on deposit in the Revenue Fund.

32.     Section 401 goes on to provide that:

> *The moneys in said Funds and Accounts shall be held by the Fiscal Agent in trust* and applied as hereinafter provided with regard to each such Fund and Account and, pending such application, *shall be subject to a lien and charge in favor of the holders of the bonds* issued and outstanding under this Resolution and for the further security of such holders until paid out or transferred as herein provided.

1998 Resolution § 401 (emphasis added).

33.     As with the 1968 Resolution, the 1998 Resolution granted 1998 Bondholders a security interest in only those Revenues that are both *received* by HTA and *deposited* with the Fiscal Agent in the Revenue Fund (and transferred to the 1998 Sinking Funds, including the accounts therein). The 1998 Resolution lacks any language granting a security interest in HTA's *right (if any) to receive* 1998 HTA Revenues. Every reference to the granting of a security interest in the revenues limits the security interest to moneys HTA *received*, moneys *held* by the Fiscal Agent and moneys *deposited* to the credit of the relevant HTA account. See *id.* §§ 401, 410 (stating

"moneys held" in the various accounts in the 1998 Sinking Fund established for the senior 1998

Bonds "shall be held in trust" and are "pledged" to the payment of such 1998 Bonds), 411 (stating

"moneys held" in the various accounts in the 1998 Sinking Fund established for the subordinated

1998 Bonds "shall be held in trust" and are "pledged" to the payment of such 1998 Bonds), 501

(stating "[a]ll moneys deposited with the Fiscal Agent . . . shall be held in trust and applied in

accordance with the provisions of this Resolution.").

34.    The scope of the collateral in which security interests are granted to the 1998

Bondholders is limited to 1998 HTA Revenues both "received" by HTA and "deposited" with the

Fiscal Agent.

35.    Pursuant to a security agreement, dated as of February 7, 2002 (the "1998 Security

Agreement," attached hereto as **Exhibit J**), HTA granted to the Fiscal Agent a security interest in

(i) the Revenue Fund, (ii) the 1998 Sinking Funds, and (iii) all amounts required to be on deposit

therein by the terms of the 1998 Resolution.

36.    As with the 1998 Bond Resolution, the 1998 Security Agreement lacks any

language granting a security interest in all 1998 HTA Revenues or in HTA's right (if any) to

receive 1998 HTA Revenues.  Similarly, by limiting the security interest to funds required to be

on deposit in the Revenue Fund and the 1998 Sinking Funds, the 1998 Security Agreement restricts

the security interest to only those Revenues that are received by HTA.  Thus, the scope of the

security interest granted pursuant to the 1998 Security Agreement is consistent with the scope of

the security interest granted pursuant to the 1998 Resolution.

II.    **Article 9 and the Financing Statements**

        a.  **Article 9 of the Uniform Commercial Code**

37.    Commonwealth law governs the effectiveness and perfection of security interests

in HTA's property.  *See* 19 L.P.R.A. § 2251.

14

38.     The Commonwealth adopted Article 9 of the Uniform Commercial Code (the "UCC"), effective in 1996, which governs the granting and perfection of security interests.

39.     The Commonwealth adopted revised Article 9 of the UCC, effective January 17, 2013 (hereinafter, revised Article 9 is referred to as "Article 9").  *See* Act No. 21-2012; 19 L.P.R.A. § 2211 *et seq*.

40.     Under Article 9, a security interest can only attach to property that "the debtor has rights in . . . or the power to transfer rights in . . . ."  19 L.P.R.A. § 2233(b)(2).

41.     Under Article 9, subject to one exception for "proceeds" not applicable here, the *only* way to perfect a security interest in funds credited to a deposit account is by "control" of the deposit account.  19 L.P.R.A. § 2262(b)(1) ("a security interest in a deposit account may be perfected *only* by control" (emphasis added)); *see also* 19 L.P.R.A. § 2264(a) ("A security interest in . . . deposit accounts . . . may be perfected by control of the collateral under § 2214 . . . .").

42.     Under Article 9, a secured party has "control" of a deposit account if (a) the secured party is the bank with which the deposit account is maintained, (b) the secured party is the customer of the bank (and the holder of the deposit account), or (c) the borrower/debtor, the secured party and the bank have executed a deposit account control agreement that gives the secured party requisite "control" of the deposit account (by providing that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the borrower/debtor).  *See* 19 L.P.R.A. § 2214(a)(1)-(3).

43.     Under Article 9, a financing statement must be filed to perfect any purported security interest in HTA's rights to receive Revenues.  19 L.P.R.A. § 2260(a).

44.     A financing statement is not a security agreement and cannot create a new security interest or enlarge any security interests granted by the Resolutions (or additionally, in the case of the 1998 Bonds, by the 1998 Security Agreement).

45.     Under Article 9, a "financing statement is sufficient only if it . . . provides the name of the secured party or a representative of the secured party."  19 L.P.R.A. § 2322(a).

46.     Under Article 9, a "financing statement is sufficient only if it . . . indicates the collateral covered by the financing statement."  19 L.P.R.A. § 2322(a).

47.     Under Article 9, a "lien creditor" has priority over unperfected security interests. 19 L.P.R.A. § 2267(a)(2).

48.     Under Article 9, "lien creditor" means, among other things, "a trustee in bankruptcy from the date of the filing of the petition."  19 L.P.R.A. § 2212(a)(52).

> **b.     The 1968 Bond Financing Statements**

49.     Four financing statements were filed that name HTA as the debtor and the 1968 Bondholders as the secured party or the beneficiaries of the secured party.

50.     <u>First</u>, on May 16, 2014, a financing statement was filed that names as the secured party "Holders of all Bonds issued under the 1968 Resolution (as defined below)."  *See* Dep't of State Doc. No. 2014002566 ("FS 2566").  FS 2566 describes the 1968 Bondholders' collateral, in material part, as "[p]ursuant to that certain Resolution 69-18 [(sic)] adopted on June 13, 1968 (the "1968 Resolution"), all of [HTA's] right, title, and interest in and to 'Revenues,'" and includes a description of certain Revenues taken from the 1968 Resolution's definition of Revenues.[14]  FS

---

[14]  The 1968 Resolution does not contain any language granting 1968 Bondholders a security interest in HTA's "right, title, and interest in and to" Revenues; such language referring to HTA's "right, title, and interest in and to" Revenues is found exclusively in the 1968 Financing Statements.  A financing statement is not a security agreement and cannot create a new security interest or enlarge any security interest granted by the 1968 Resolution.  As such, the references in the 1968 Financing Statements to HTA's "right, title, and interest in and to" Revenues does not enlarge the scope of the security interest (if any) granted under the 1968 Resolution.

2566 states that "[c]apitalized terms used herein and not otherwise defined herein will have the meanings given to such terms in the 1968 Resolution." However, the 1968 Resolution is not attached to FS 2566. FS 2566 does not list HTA's *right (if any) to receive* Revenues as collateral.

51.     Second, also on May 16, 2014, a financing statement was filed that names as the secured party "Assured for the benefit of Holders of all Bonds issued under the 1968 Resolution (as defined below)." *See* Dep't of State Doc. No. 2014002568 ("FS 2568"). FS 2568 has a materially identical description of the collateral as FS 2566. The 1968 Resolution is not attached to FS 2568. FS 2568 does not list HTA's *right (if any) to receive* Revenues as collateral.

52.     Third, on August 4, 2014, a financing statement was filed that names as the secured party "Holders of all bonds ("1968 Resolution Bonds") issued under Resolution 68-18." *See* Dep't of State Doc. No. 2014003808 ("FS 3808"). FS 3808 describes the 1968 Bondholders' collateral, in material part, as "[a]ll of [HTA's] right, title, and interest in and to" various of HTA's Revenues. FS 3808 does not list HTA's *right (if any) to receive* Revenues as collateral.

53.     Fourth, also on August 4, 2014, a financing statement was filed that names as the secured party "Ambac Assurance Corporation ("Ambac") for benefit of holders of all bonds ("1968 Resolution Bonds") issued under Resolution 68-18." *See* Dep't of State Doc. No. 2014003807 ("FS 3807," and with FS 2566, FS 2568, and FS 3808, the "1968 Financing Statements").[15] FS 3807 has an identical description of the collateral as FS 3808. FS 3807 does not list HTA's *right (if any) to receive* Revenues as collateral.

54.     In summary, none of the 1968 Financing Statements either (i) sufficiently name the secured party or (ii) list HTA's *right to receive* Revenues as collateral.

            c.     **The 1998 Bond Financing Statements**

---

[15]   The 1968 Financing Statements are attached hereto as **Exhibit D**.

55.     Six financing statements were filed that name HTA as the debtor and the 1998 Bondholders as the secured party or the beneficiaries of the secured party.

56.     First, on August 4, 2014, a financing statement was filed that names as the secured party "Holders of all bonds ("1998 Resolution Bonds") issued under Resolution 98-06." *See* Dep't of State Doc. No. 2014003809 ("FS 3809"). FS 3809 describes the 1998 Bondholders' collateral, in material part, as "[a]ll of [HTA's] rights, title, and interest in and to" various of HTA's Revenues.[16] *Id.* FS 3809 does not list HTA's *right (if any) to receive* Revenues as collateral.

57.     Second, also on August 4, 2014, a financing statement was filed that names as the secured party "Ambac Assurance Corporation ("Ambac") for benefit of holders of all bonds ("1998 Resolution Bonds") issued under Resolution 98-06." *See* Dep't of State Doc. No. 2014003810 ("FS 3810"). FS 3810 has an identical description of the collateral as FS 3809. FS 3810 does not list HTA's *right (if any) to receive* Revenues as collateral.

58.     Third, on September 9, 2014, a financing statement was filed that names as the secured party "HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION." *See* Dep't of State Doc. No. 2014004845 ("FS 4845"). FS 4845 attached a two page description of the 1998 Bondholders' collateral, which describes the collateral, in material part, as "all of [HTA's] right, title and interest in and to (a) all 'Revenues'" (as well as all of HTA's right, title and interest in and to the Revenue Fund and the 1998 Sinking Funds). *Id.* FS 4845 does not list HTA's *right (if any) to receive* Revenues as collateral.

---

[16] Neither the 1998 Resolution nor the 1998 Security Agreement contains any language granting 1998 Bondholders a security interest in HTA's "right, title, and interest in and to" Revenues; such language referring to HTA's "right, title, and interest in and to" Revenues is found exclusively in the 1998 Financing Statements. A financing statement is not a security agreement and cannot create a new security interest or enlarge any security interest granted by the 1998 Resolution or the 1998 Security Agreement. As such, the references in the 1998 Financing Statements to HTA's "right, title, and interest in and to" Revenues does not enlarge the scope of the security interest (if any) granted under the 1998 Resolution or the 1998 Security Agreement.

59.     <u>Fourth</u>, also on September 9, 2014, a financing statement was filed that names as

the secured party "HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION."

*See* Dep't of State Doc. No. 2014004847 ("<u>FS 4847</u>").  FS 4847 has a materially identical

description of the collateral as FS 4845.  FS 4847 does not list HTA's *right (if any) to receive*

Revenues as collateral.

60.     <u>Fifth</u>, also on September 9, 2014, a financing statement was filed that names as the

secured party "HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION."  *See*

Dep't of State Doc. No. 2014004848 ("<u>FS 4848</u>").  FS 4848 attached a one page description of the

1998 Bondholders' collateral, which refers to the 1998 Security Agreement and describes the 1998

Bondholders' collateral as "all Revenues (as defined in the Resolution)" (as well as the Revenue

Fund and all amounts on deposit and required to be on deposit in the Revenue Fund by the terms

of the 1998 Bond Resolution).  The 1998 Security Agreement is not attached to FS 4848.  FS 4848

does not list HTA's *right (if any) to receive* Revenues as collateral.

61.     <u>Sixth</u>, also on September 9, 2014, a financing statement was filed that names as the

secured party "HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION."  *See*

Dep't of State Doc. No. 2014004846 ("<u>FS 4846</u>," and collectively with FS 3809, FS 3810, FS

4845, FS 4847, FS 4848, the "<u>1998 Financing Statements</u>").[17]  FS 4846 has a materially identical

description of the collateral as FS 4848.  The 1998 Security Agreement is not attached to FS 4848.

FS 4846 does not list HTA's *right (if any) to receive* Revenues as collateral.

62.     In summary, none of the 1998 Financing Statements either (i) sufficiently name the

secured party or (ii) list HTA's *right to receive* its Revenues as collateral.

III.    **HTA Allocable Revenues**

---

[17] The 1998 Financing Statements are attached hereto as **Exhibit E**.

63.     Puerto Rico law conditionally allocates the HTA Allocable Revenues—the
revenues of certain excise taxes and fees imposed and collected by the Commonwealth—to HTA
for its corporate purposes (including, subject to conditions, the pledge and application of such
revenues to the payment of HTA's bonds).

64.     The Commonwealth conditionally allocates three sets of tax or fee revenues to
HTA: revenues of gasoline, diesel, crude oil, and other excise taxes imposed by the
Commonwealth pursuant to 13 L.P.R.A. § 31626 and 13 L.P.R.A. § 31627 (the "Excise Taxes");
revenues of cigarette excise taxes imposed by the Commonwealth pursuant to 13 L.P.R.A. § 31625
("Cigarette Excise Taxes"); and revenues of motor vehicle license fees imposed by the
Commonwealth pursuant to Act 22-2000, as amended (the "Vehicle Fees").

65.     The statutes conditionally allocating the HTA Allocable Revenues to HTA
expressly set forth that the HTA Allocable Revenues are subject to retention by the
Commonwealth if the Commonwealth's available resources are insufficient to cover its expenses
in a given fiscal year.  *See* 13 L.P.R.A. § 31751(a)(1)(E) (Excise Taxes); *see also* 9 L.P.R.A. §
2004(1) (Excise Taxes); 13 L.P.R.A. § 31751(a)(3)(C) (Cigarette Excise Taxes); 9 L.P.R.A. §
2021 (Vehicle Fees); *see also* 9 L.P.R.A. § 5681 (Vehicle Fees).

66.     The statutes also provide that any rights HTA has to the HTA Allocable Revenues
only arise *after* the HTA Allocable Revenues have been "collected" by or on behalf of the
Commonwealth and received by HTA.

67.     Specifically, the Excise Taxes and Cigarette Excise Taxes are conditionally payable
to HTA on a monthly basis *after* they are "collected."  *See* 13 L.P.R.A. § 31751(a)(1) (Excise
Taxes covered over to HTA on monthly basis following collection); 13 L.P.R.A. § 31751(a)(3)
(Cigarette Excise Taxes covered over to HTA on monthly basis following collection).

68.     Similarly, the Vehicle Fees are only allocated to HTA *after* they are "collected." *See* 9 L.P.R.A. § 5681 (directing Secretary of the Treasury to cover over Vehicle Fees to HTA after they have been collected).

## IV.    PROMESA and the Retention of the HTA Allocable Revenues

### a.  PROMESA

69.     On June 30, 2016, President Obama signed PROMESA into law.

70.     PROMESA created the Oversight Board for Puerto Rico.  PROMESA § 101(b).

71.     PROMESA section 201 gives the Oversight Board the power to develop and certify fiscal plans for the Commonwealth and its instrumentalities.  PROMESA § 201.

72.     PROMESA section 202 gives the Oversight Board the power to develop and certify budgets for the Commonwealth and its instrumentalities, which shall be deemed to be "in full force and effect" once certified.  PROMESA § 202(e)(3)(C).

73.     PROMESA section 4 provides that "the provisions of [PROMESA] shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]."  PROMESA § 4.

### b.  The Fiscal Plans and the Retention of the HTA Allocable Revenues

74.     Between March 13, 2017 and October 23, 2018, the Oversight Board certified seven fiscal plans for the Commonwealth.  Each fiscal plan required that the Commonwealth retain the HTA Allocable Revenues to meet the fiscal plan's cash flow projections and requirements.

75.     On June 29, 2018, the Oversight Board certified the current fiscal plan for HTA ("HTA Fiscal Plan"), attached hereto as **Exhibit F**.  The HTA Fiscal Plan does not provide for the payment of any of the HTA Allocable Revenues to HTA.  *Id.* at 27 and 39.

76.     On June 30, 2018, the Oversight Board certified a budget for the Commonwealth for the current Fiscal Year 2018-2019 (the "Certified FY19 Budget"), attached hereto as **Exhibit**

**G**.  The Certified FY19 Budget provides for the retention and expenditure of the HTA Allocable Revenues by the Commonwealth.  In connection with the Excise Taxes, the Certified FY19 Budget expressly provides that "[n]otwithstanding any other legal provisions to the contrary" the revenues of the Excise Taxes are to be retained by the Commonwealth and used by the Commonwealth to fund certain of its operations.  Certified FY19 Budget, Ex. 1 at 1.

77.     The Certified FY19 Budget is partly based on a projection of Commonwealth revenues developed by the Oversight Board.  *See* FY19 Revenue Forecast Letter, dated May 31, 2018 ("FY19 Revenue Letter"), attached hereto as **Exhibit H**.  The FY Revenue Letter explicitly lists the HTA Allocable Revenues as revenues to be retained by the Commonwealth for the Commonwealth's use.  *See* FY19 Revenue Letter, Appendix A.

78.     On May 9, 2019, the Oversight Board certified the current fiscal plan for the Commonwealth ("May 2019 Fiscal Plan"), attached hereto as **Exhibit I**.  The May 2019 Fiscal Plan requires that the Commonwealth retain the HTA Allocable Revenues to meet the May 2019 Fiscal Plan's cash flow projections and fund required expenditures.  *Id.* at 28, 40, and 122.  The May 2019 Fiscal Plan contains a "Revenue Breakdown" that lists HTA Allocable Revenues as available for the Commonwealth's use.  *Id.* at 148, Ex. 84.

## V.     HTA's Title III Case

79.     On May 21, 2017, the Oversight Board, at the request of the Governor, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under title III thereof ("HTA's Title III Case").  On June 1, 2017, the Court entered an order granting the joint administration of HTA's Title III Case with the Commonwealth of Puerto Rico's Title III case [Case No. 17-BK-3283-LTS], for procedural purposes only.  *See* Case No. 17-BK-3283-LTS, ECF No. 242.

## COUNT I

DECLARATORY JUDGMENT THAT UNDER THE 1968 RESOLUTION, HTA'S PLEDGE
OF, AND GRANT OF A SECURITY INTEREST IN, REVENUES DOES NOT EXTEND
BEYOND REVENUES RECEIVED BY HTA AND DEPOSITED IN CERTAIN ACCOUNTS
HELD BY THE FISCAL AGENT AND DISALLOWING CLAIMS TO SECURITY
INTERESTS
(28 U.S.C. §§ 2201, 2202, 11 U.S.C. § 502(a))

80.     Plaintiffs repeat and incorporate by reference each allegation contained in the
preceding paragraphs as if fully set forth herein.

81.     The 1968 Resolution granted security interests in HTA's 1968 HTA Revenues as
security for the payment of the 1968 Bonds to the extent particularly specified elsewhere in the
1968 Resolution.  *See* 1968 Bond Resolution, § 601.

82.     In section 401, the 1968 Bond Resolution particularly specifies the extent to which
a security interest is granted in the 1968 HTA Revenues and makes clear that security interests are
only granted—if they are granted at all—to the extent 1968 HTA Revenues are both *received by
HTA* and *deposited* with the Fiscal Agent in the Sinking Fund.

83.     The 1968 Resolution neither granted a security interest in HTA's *right (if any) to
receive* 1968 HTA Revenues, nor granted a security interest in HTA 1968 Revenues or other
moneys (i) not received by HTA, or (ii) received by HTA but not deposited with the Fiscal Agent
in the Sinking Fund.

84.     Defendants do not hold security interests in HTA's right (if any) to receive any of
the 1968 HTA Revenues, nor in HTA 1968 Revenues or other moneys (i) not received by HTA or
(ii) received by HTA but not deposited with the Fiscal Agent in the Sinking Fund.

85.     Defendants assert security interests in moneys not received by HTA and not
deposited with the Fiscal Agent in the Sinking Fund (including in moneys retained by the

Commonwealth), and therefore impliedly assert security interests in HTA's right (if any) to receive 1968 HTA Revenues. *See, e.g.,* Proofs of Claim Nos. 115380, 26541.

86.     An actual, substantial, and justiciable controversy exists between HTA and Defendants concerning the validity, priority, extent and enforceability of the security interests asserted in HTA's property.

87.     Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that Defendants do not hold security interests in anything beyond 1968 HTA Revenues received by HTA and deposited with the Fiscal Agent in the Sinking Fund.

88.     Pursuant to Bankruptcy Code section 502(a), Plaintiffs are entitled to an order disallowing claims to such security interests.

## COUNT II

**DECLARATORY JUDGMENT THAT UNDER THE 1998 RESOLUTION AND THE 1998
SECURITY AGREEMENT, HTA'S PLEDGE OF, AND GRANT OF A SECURITY
INTEREST IN, REVENUES DOES NOT EXTEND BEYOND REVENUES RECEIVED BY
HTA AND DEPOSITED IN CERTAIN ACCOUNTS HELD BY THE FISCAL AGENT AND
DISALLOWING CLAIMS TO SECURITY INTERESTS**
(28 U.S.C. §§ 2201, 2202, 11 U.S.C. § 502(a))

89.     Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

90.     The 1998 Resolution granted security interests in 1998 HTA Revenues as security for the payment of the 1998 Bonds to the extent particularly specified elsewhere in the 1998 Resolution. *See* 1998 Bond Resolution, § 601.

91.     In section 401, the 1998 Bond Resolution particularly specifies the extent to which a security interest is granted in the 1998 HTA Revenues and makes clear security interests are only granted—if they are granted at all—to the extent 1998 HTA Revenues are both *received by HTA*

and *deposited* with the Fiscal Agent in the Revenue Fund (and transferred to the 1998 Sinking Funds in accordance with the 1998 Resolution).

92.     The 1998 Resolution neither granted a security interest in HTA's *right (if any) to receive* 1998 HTA Revenues, nor a security interest in HTA 1998 Revenues or other moneys (i) not received by HTA or (ii) received by HTA but not deposited with the Fiscal Agent in the Revenue Fund (and transferred to the 1998 Sinking Funds in accordance with the 1998 Resolution).

93.     The 1998 Security Agreement neither granted a security interest in HTA's right (if any) to receive 1998 HTA Revenues, nor a security interest in HTA 1998 Revenues or other moneys (i) not received by HTA or (ii) received by HTA but not deposited with the Fiscal Agent in the Revenue Fund (and transferred to the 1998 Sinking Funds in accordance with the 1998 Resolution).

94.     Defendants do not hold security interests in HTA's right (if any) to receive any of the 1998 HTA Revenues, nor in HTA's 1998 Revenues or other moneys (i) not received by HTA or (ii) received by HTA but not deposited with the Fiscal Agent in the Revenue Fund (and transferred to the 1998 Sinking Funds in accordance with the 1998 Resolution).

95.     Defendants assert security interests in moneys not received by HTA and not deposited with the Fiscal Agent in the Revenue Fund (including in moneys retained by the Commonwealth), and therefore impliedly assert security interests in HTA's right (if any) to receive 1998 HTA Revenues.  *See, e.g.,* Proofs of Claim Nos. 121053, 35227, 120982.

96.     An actual, substantial, and justiciable controversy exists between HTA and Defendants concerning the validity, priority, extent and enforceability of the security interests asserted in HTA's property.

97.     Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that Defendants do not hold security interests in anything beyond 1998 HTA Revenues received by HTA and deposited with the Fiscal Agent in the Revenue Fund (and transferred to the 1998 Sinking Funds in accordance with the 1998 Resolution).

98.     Pursuant to Bankruptcy Code section 502(a), Plaintiffs are entitled to an order disallowing claims to such security interests.

## COUNT III

**JUDGMENT AVOIDING AND PRESERVING FOR BENEFIT OF HTA ANY SECURITY INTERESTS GRANTED 1968 BONDHOLDERS IN ANY DEPOSIT ACCOUNTS NOT CONTROLLED BY THE FISCAL AGENT OR IN ANY OF THE FUNDS DEPOSITED TO THE CREDIT OF ANY SUCH DEPOSIT ACCOUNTS PURSUANT TO BANKRUPTCY CODE SECTIONS 544 AND 551**
(48 U.S.C. § 2161; 11 U.S.C. §§ 544, 550, 551; 19 L.P.R.A. §§ 2214, 2262, 2264, 2267)

99.     Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

100.     Pursuant to Bankruptcy Code section 544(a), HTA has, as of the commencement of HTA's Title III case, and without regard to any knowledge of a trustee, debtor, or creditor, the rights and powers of, or may avoid any transfer of its property or any obligation it incurred that is voidable by, a judicial lien creditor, among other things.  11 U.S.C. § 544(a).

101.     Pursuant to 19 L.P.R.A. § 2267(a)(2), under Puerto Rico law a judicial lien creditor has priority over unperfected security interests.

102.     Under Article 9, subject to one exception for "proceeds" not applicable here, the *only* way to perfect a security interest in funds credited to a deposit account is by "control" of the deposit account.  19 L.P.R.A. § 2262(b)(1) ("a security interest in a deposit account may be

perfected *only* by control") (emphasis added); *see also* 19 L.P.R.A. § 2264(a) ("A security interest in . . . deposit accounts . . . may be perfected by control of the collateral under § 2214 . . . .").

103.     Under Article 9, a secured party has "control" of a deposit account if (a) the secured party is the bank with which the deposit account is maintained, (b) the secured party is the customer of the bank (and the holder of the deposit account), or (c) the borrower/debtor, the secured party and the bank have executed a deposit account control agreement (a "DACA") that gives the secured party requisite "control" of the deposit account (by providing that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the borrower/debtor).  19 L.P.R.A. § 2214(a)(1)-(3).

104.     No DACA exists with respect to any of HTA's deposit accounts that are not held by the Fiscal Agent.

105.     Defendants do not have control of any of HTA's deposit accounts that are not held by the Fiscal Agent by any other method of control.

106.     If the 1968 Resolution grants Defendants a security interest in any of HTA's deposit accounts that are not controlled by the Fiscal Agent and/or the funds credited to any such deposit accounts (which it does not), such security interest is unperfected because the Fiscal Agent does not have control of such deposit accounts, and therefore invalid, unenforceable, and subject to avoidance and preservation for HTA pursuant to sections 544 and 551.

107.     Defendants assert perfected security interests in moneys *not* deposited with the Fiscal Agent and, therefore, in funds credited to HTA's deposit accounts that are not controlled by the Fiscal Agent.  *See, e.g.,* Proofs of Claim Nos. 115380, 26541.

108.    An actual, substantial, and justiciable controversy exists between HTA and Defendants concerning the validity, priority, extent and enforceability of the security interests asserted in HTA's property.

109.    Pursuant to Bankruptcy Code sections 544(a) and 551, and 19 L.P.R.A. § 2267(a)(2), any security interests of Defendants granted by the 1968 Resolution in any of HTA's deposit accounts that are not controlled by the Fiscal Agent (or funds credited to any such deposit accounts) should be avoided, recovered for HTA pursuant to Bankruptcy Code section 550, and/or automatically preserved for the benefit of HTA pursuant to Bankruptcy Code section 551.

## COUNT IV

JUDGMENT AVOIDING AND PRESERVING FOR BENEFIT OF HTA ANY SECURITY INTERESTS GRANTED 1998 BONDHOLDERS IN ANY DEPOSIT ACCOUNTS NOT CONTROLLED BY THE FISCAL AGENT OR IN ANY OF THE FUNDS CREDITED TO SUCH DEPOSIT ACCOUNTS PURSUANT TO BANKRUPTCY CODE SECTIONS 544 AND 551
(48 U.S.C. § 2161; 11 U.S.C. §§ 544, 550, 551; 19 L.P.R.A. §§ 2214, 2262, 2264, 2267)

110.    Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

111.    Pursuant to Bankruptcy Code section 544(a), HTA has, as of the commencement of HTA's Title III case, and without regard to any knowledge of a trustee, debtor, or creditor, the rights and powers of, or may avoid any transfer of its property or any obligation it incurred that is voidable by, a judicial lien creditor, among other things.  11 U.S.C. § 544(a).

112.    Pursuant to 19 L.P.R.A. § 2267(a)(2), under Puerto Rico law a judicial lien creditor has priority over unperfected security interests.

113.    Under Article 9, subject to one exception for "proceeds" not applicable here, the *only* way to perfect a security interest in funds credited to a deposit account is by "control" of the deposit account.  19 L.P.R.A. § 2262(b)(1) ("a security interest in a deposit account may be

perfected *only* by control" (emphasis added)); *see also* 19 L.P.R.A. § 2264(a) ("A security interest in . . . deposit accounts . . . may be perfected by control of the collateral under § 2214 . . . .").

114.    Under Article 9, a secured party has "control" of a deposit account if (a) the secured party is the bank with which the deposit account is maintained, (b) the secured party is the customer of the bank (and the holder of the deposit account), or (c) the borrower/debtor, the secured party and the bank have executed a deposit account control agreement (a "<u>DACA</u>") that gives the secured party requisite "control" of the deposit account (by providing that the bank will comply with instructions originated by the secured party directing the disposition of the funds in the deposit account without further consent by the borrower/debtor).  19 L.P.R.A. § 2214(a)(1)-(3).

115.    No DACA exists with respect to any of HTA's deposit accounts that are not held by the Fiscal Agent.

116.    Defendants do not have control of any of HTA's deposit accounts that are not held by the Fiscal Agent by any other method of control.

117.    If the 1998 Resolution grants Defendants security interests in any of HTA's deposit accounts that are not controlled by the Fiscal Agent and/or the funds credited to any such deposit accounts (which it does not), such security interests are unperfected because the Fiscal Agent does not have control of such deposit accounts, and therefore invalid, unenforceable, and subject to avoidance and preservation for HTA pursuant to sections 544 and 551.

118.    Defendants assert perfected security interests in moneys *not* deposited with the Fiscal Agent and, therefore, in funds credited to HTA's deposit accounts that are not controlled by the Fiscal Agent.  *See, e.g.,* Proofs of Claim Nos. 121053, 35227, 120982.

119.    An actual, substantial, and justiciable controversy exists between HTA and Defendants concerning the validity, priority, extent and enforceability of the security interests asserted in HTA's property.

120.    Pursuant to Bankruptcy Code sections 544(a) and 551, and 19 L.P.R.A. § 2267(a)(2), any security interests of Defendants granted by the 1998 Resolution and the 1998 Security Agreement in any of HTA's deposit accounts that are not controlled by the Fiscal Agent (or in funds credited to any such deposit accounts) should be avoided, recovered for HTA pursuant to Bankruptcy Code section 550, and/or automatically preserved for the benefit of HTA pursuant to Bankruptcy Code section 551.

## COUNT V

DECLARATORY JUDGMENT THAT UNDER PUERTO RICO LAW HTA'S INTEREST IN DEPOSIT ACCOUNTS NOT HELD BY THE FISCAL AGENT AND FUNDS CREDITED TO SUCH DEPOSIT ACCOUNTS IS ENTITLED TO PRIORITY OVER ANY SECURITY INTERESTS IN SUCH ACCOUNTS AND SUCH FUNDS GRANTED BONDHOLDERS UNDER EITHER RESOLUTION AND/OR THE 1998 SECURITY AGREEMENT AND DISALLOWING CLAIMS TO SUCH SECURITY INTERESTS
(48 U.S.C. § 2161; 19 L.P.R.A. §§ 2212(a)(52), 2267(a)(2) , 11 U.S.C. § 502(a))

121.    Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

122.    Under Article 9, subject to one exception for "proceeds" not applicable here, the *only* way to perfect a security interest in funds credited to a deposit account is by "control" of the deposit account.  19 L.P.R.A. § 2262(b)(1) ("a security interest in a deposit account may be perfected *only* by control" (emphasis added)); *see also* 19 L.P.R.A. § 2264(a) ("A security interest in . . . deposit accounts . . . may be perfected by control of the collateral under § 2214 . . . .").

123.    Under Article 9, a secured party has "control" of a deposit account if (a) the secured party is the bank with which the deposit account is maintained, (b) the secured party is the customer of the bank (and the holder of the deposit account), or (c) the borrower/debtor, the secured party

and the bank have executed a deposit account control agreement (a "DACA") that gives the secured party requisite "control" of the deposit account (by providing that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the borrower/debtor).  19 L.P.R.A. § 2214(a)(1)-(3).

124.    No DACA exists with respect to any of HTA's deposit accounts that are not held by the Fiscal Agent.

125.    Defendants do not have control of any of HTA's deposit accounts that are not held by the Fiscal Agent by any other method of control.

126.    If the 1968 Resolution, the 1998 Resolution, or the 1998 Security Agreement grants Defendants security interests in any of HTA's deposit accounts that are not held by the Fiscal Agent and/or funds credited to such deposit accounts (which they do not), such security interests are unperfected because the Fiscal Agent does not have control of such deposit accounts.

127.    Under Article 9, a "lien creditor" has priority over unperfected security interests. 19 L.P.R.A. § 2267(a)(2).

128.    Under Article 9, "lien creditor" means, among other things, "a trustee in bankruptcy from the date of the filing of the petition."  19 L.P.R.A. § 2212(a)(52).

129.    Pursuant to PROMESA section 301(c)(7), "the term 'trustee', when used in [the Bankruptcy Code], means the Oversight Board . . . ."  PROMESA § 301(c)(7).

130.    HTA's interest in any of HTA's property has priority over unperfected security interests in such property, including any purported but unperfected security interests of Defendants in HTA's deposit accounts not held by the Fiscal Agent and in funds credited to such deposit accounts.

131.     Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as all further appropriate relief pursuant to 28 U.S.C. § 2202, that pursuant to 19 L.P.R.A. § 2267(a)(2) HTA's interests in HTA's deposit accounts not held by the Fiscal Agent and in funds credited to such deposit accounts have priority over any security interests in such deposit accounts and such funds held by Defendants.

132.     Pursuant to Bankruptcy Code section 502(a), Plaintiffs are entitled to an order disallowing claims to such security interests.

### COUNT VI

JUDGMENT AVOIDING AND PRESERVING FOR BENEFIT OF HTA ANY SECURITY
INTERESTS GRANTED 1968 BONDHOLDERS IN HTA'S RIGHTS TO RECEIVE
REVENUES PURSUANT TO BANKRUPTCY CODE SECTIONS 544 AND 551
(48 U.S.C. § 2161; 11 U.S.C. §§ 544, 550, 551; 19 L.P.R.A. §§ 2260, 2267, 2322)

133.     Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

134.     Pursuant to Bankruptcy Code section 544(a), HTA has, as of the commencement of HTA's Title III case, and without regard to any knowledge of a trustee, debtor, or creditor, the rights and powers of, or may avoid any transfer of its property or any obligation it incurred that is voidable by, a judicial lien creditor, among other things.  11 U.S.C. § 544(a).

135.     Pursuant to 19 L.P.R.A. § 2267(a)(2), under Puerto Rico law a judicial lien creditor has priority over unperfected security interests.

136.     Under Article 9, a financing statement must be filed to perfect any purported security interest in HTA's right (if any) to receive Revenues.  19 L.P.R.A. § 2260(a).

137.     Under Article 9, a "financing statement is sufficient only if it . . . indicates the collateral covered by the financing statement."  19 L.P.R.A. § 2322(a).

138.    None of the 1968 Financing Statements list HTA's *right to receive* Revenues as collateral.

139.    Under Article 9, a "financing statement is sufficient only if it . . . provides the name of the secured party or a representative of the secured party."  19 L.P.R.A. § 2322(a).

140.    None of the 1968 Financing Statements sufficiently name the secured party or a representative of the secured party.

141.    If the 1968 Resolution grants Defendants a security interest in HTA's right (if any) to receive 1968 HTA Revenues (which it does not), such security interest is unperfected because none of the 1968 Financing Statements list HTA's right to receive 1968 HTA Revenues as collateral, and therefore invalid, unenforceable, and subject to avoidance and preservation for HTA pursuant to sections 544 and 551.

142.    Defendants assert security interests in HTA's right (if any) to receive 1968 HTA Revenues.

143.    An actual, substantial, and justiciable controversy exists between HTA and Defendants concerning the validity, priority, extent and enforceability of the security interests asserted in HTA's property.

144.    Pursuant to Bankruptcy Code sections 544(a) and 551, and 19 L.P.R.A. § 2267(a)(2), any security interests of Defendants in HTA's right (if any) to receive Revenues should be avoided, recovered for HTA pursuant to Bankruptcy Code section 550, and/or automatically preserved for the benefit of HTA pursuant to Bankruptcy Code section 551.

## COUNT VII

JUDGMENT AVOIDING AND PRESERVING FOR BENEFIT OF HTA ANY SECURITY
INTERESTS GRANTED 1998 BONDHOLDERS IN HTA'S RIGHTS TO RECEIVE
REVENUES PURSUANT TO BANKRUPTCY CODE SECTIONS 544 AND 551
(48 U.S.C. § 2161; 11 U.S.C. §§ 544, 550, 551; 19 L.P.R.A. §§ 2260, 2267, 2322)

145.    Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

146.    Pursuant to Bankruptcy Code section 544(a), HTA has, as of the commencement of HTA's Title III case, and without regard to any knowledge of a trustee, debtor, or creditor, the rights and powers of, or may avoid any transfer of its property or any obligation it incurred that is voidable by, a judicial lien creditor, among other things.  11 U.S.C. § 544(a).

147.    Pursuant to 19 L.P.R.A. § 2267(a)(2), under Puerto Rico law a judicial lien creditor has priority over unperfected security interests.

148.    Under Article 9, a financing statement must be filed to perfect any purported security interest in HTA's right (if any) to receive Revenues.  19 L.P.R.A. § 2260(a).

149.    Under Article 9, a "financing statement is sufficient only if it . . .  indicates the collateral covered by the financing statement."  19 L.P.R.A. § 2322(a).

150.    None of the 1998 Financing Statements list HTA's *right to receive* Revenues as collateral.

151.    Under Article 9, a "financing statement is sufficient only if it . . . provides the name of the secured party or a representative of the secured party."  19 L.P.R.A. § 2322(a).

152.    None of the 1998 Financing Statements sufficiently name the secured party or a representative of the secured party.

153.    If the 1998 Resolution or the 1998 Security Agreement grants Defendants a security interest in HTA's right (if any) to receive 1998 HTA Revenues (which they do not), such security interest is unperfected because none of the 1998 Financing Statements list HTA's right to receive 1998 HTA Revenues as collateral, and therefore invalid, unenforceable, and subject to avoidance and preservation for HTA pursuant to sections 544 and 551.

154.    Defendants assert security interests in HTA's right (if any) to receive 1998 HTA Revenues.

155.    An actual, substantial, and justiciable controversy exists between HTA and Defendants concerning the validity, priority, extent and enforceability of the security interests asserted in HTA's property.

156.    Pursuant to Bankruptcy Code sections 544(a) and 551, and 19 L.P.R.A. § 2267(a)(2), any security interests of Defendants in HTA's right (if any) to receive Revenues should be avoided, recovered for HTA pursuant to Bankruptcy Code section 550, and/or automatically preserved for the benefit of HTA pursuant to Bankruptcy Code section 551.

## COUNT VIII

**DECLARATORY JUDGMENT THAT UNDER PUERTO RICO LAW HTA'S INTEREST IN HTA'S RIGHT (IF ANY) TO RECEIVE REVENUES IS ENTITLED TO PRIORITY OVER ANY SECURITY INTERESTS IN THE SAME GRANTED BONDHOLDERS UNDER THE RESOLUTIONS AND THE 1998 SECURITY AGREEMENT AND DISALLOWING CLAIMS TO SUCH SECURITY INTERESTS**
(48 U.S.C. § 2161; 19 L.P.R.A. §§ 2212(a)(52), 2267(a)(2) , 11 U.S.C. § 502(a))

157.    Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

158.    Under Article 9, a financing statement must be filed to perfect any purported security interest in HTA's right (if any) to receive Revenues.  19 L.P.R.A. § 2260(a).

159.    Under Article 9, a "financing statement is sufficient only if it . . . indicates the collateral covered by the financing statement."  19 L.P.R.A. § 2322(a).

160.    None of the 1968 Financing Statements nor the 1998 Financing Statements list HTA's *right (if any) to receive* Revenues as collateral.

161.    If the 1968 Resolution, the 1968 Resolution, or the 1998 Security Agreement grants Defendants security interests in HTA's right (if any) to receive Revenues (which they do not), such

security interest is unperfected because none of the 1968 Financing Statements or the 1998 Financing Statements lists HTA's right to receive Revenues as collateral.

162.    Under Article 9, a "financing statement is sufficient only if it . . . provides the name of the secured party or a representative of the secured party."  19 L.P.R.A. § 2322(a).

163.    None of the 1968 Financing Statements nor the 1998 Financing Statements sufficiently name the secured party or a representative of the secured party.

164.    Under Article 9, a "lien creditor" has priority over unperfected security interests. 19 L.P.R.A. § 2267(a)(2).

165.    Under Article 9, "lien creditor" means, among other things, "a trustee in bankruptcy from the date of the filing of the petition."  19 L.P.R.A. § 2212(a)(52).

166.    Pursuant to PROMESA section 301(c)(7), "the term 'trustee', when used in [the Bankruptcy Code], means the Oversight Board . . . ."  PROMESA § 301(c)(7).

167.    HTA's interests in HTA's right (if any) to receive Revenues have priority over unperfected security interests in such right, including any purported but unperfected security interests of Defendants in such right.

168.    Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as all further appropriate relief pursuant to 28 U.S.C. § 2202, that pursuant to 19 L.P.R.A. § 2267(a)(2) HTA's interests in HTA's right (if any) to receive Revenues have priority over any security interests of Defendants in such right.

169.    Pursuant to Bankruptcy Code section 502(a), Plaintiffs are entitled to an order disallowing claims to such security interests.

## COUNT IX

DECLARATORY JUDGMENT THAT HTA'S RIGHT (IF ANY) TO RECEIVE HTA ALLOCABLE REVENUES HAS BEEN PREEMPTED BY PROMESA, ELIMINATING ANY

SECURITY INTEREST GRANTED TO 1968 BONDHOLDERS OR 1998 BONDHOLDERS
IN HTA'S RIGHT TO RECEIVE HTA ALLOCABLE REVENUES AND DISALLOWING
CLAIMS TO SUCH SECURITY INTEREST
(48 U.S.C. §§ 2103, 2141, 2142, 2161; 28 U.S.C. §§ 2201, 2202, 11 U.S.C. § 502(a))

170.    Co-Plaintiff the Oversight Board repeats and incorporates by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

171.    Puerto Rico law conditionally allocates to HTA revenues of certain Excise Taxes, Cigarette Excise Taxes, and Vehicle Fees imposed by the Commonwealth.

172.    PROMESA section 201 grants the Oversight Board the power to develop and certify fiscal plans for the Commonwealth and its instrumentalities.  PROMESA § 201.

173.    PROMESA section 202 grants the Oversight Board the power to develop and certify budgets for all appropriations, which budgets shall be deemed to be "in full force and effect" upon certification.  PROMESA § 202(e)(3)(C).

174.    Pursuant to its powers under PROMESA section 201, the Oversight Board certified the current May 2019 Fiscal Plan.

175.    The May 2019 Fiscal Plan requires the Commonwealth to retain the HTA Allocable Revenues to meet the May 2019 Fiscal Plan's cash flow projections and fund required expenditures.  *Id.* at 28, 40, and 122.  The May 2019 Fiscal Plan contains a "Revenue Breakdown" that lists HTA Allocable Revenues as available for the Commonwealth's use.  *Id.* at 148, Ex. 84.

176.    Pursuant to its powers under PROMESA section 202, the Oversight Board certified the Certified FY19 Budget.

177.    The Certified FY19 Budget provides for the retention of the HTA Allocable Revenues by the Commonwealth for the Commonwealth's use.

178.    In connection with the Excise Taxes specifically, the Certified FY19 Budget expressly provides that "[n]otwithstanding any other legal provisions to the contrary" the revenues

of the Excise Taxes are to be retained by the Commonwealth and used by the Commonwealth to fund certain of its operations.  Certified FY19 Budget, Ex. 1 at 1.

179.    PROMESA section 4 provides that "the provisions of [PROMESA] shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]."  PROMESA § 4.

180.    PROMESA sections 201 and 202 granting the Oversight Board power to make all budget appropriations are inconsistent with the Puerto Rico statutes allocating the HTA Allocable Revenues to HTA.

181.    The Puerto Rico statutes conditionally allocating the HTA Allocable Revenues to HTA or otherwise giving HTA any rights to receive the HTA Allocable Revenues are preempted by PROMESA, eliminating any right of HTA to receive the HTA Allocable Revenues.

182.    Under Article 9, a security interest can only attach to property "the debtor has rights in . . . or the power to transfer rights in . . . ."  19 L.P.R.A. § 2233(b)(2).

183.    Because HTA's rights (if any) to receive the HTA Allocable Revenues have been eliminated, the debtor does not have rights in, or the power to transfer rights in, the HTA Allocable Revenues.

184.    Defendants do not hold a security interest in HTA's rights to receive the HTA Allocable Revenues because HTA's rights to receive the HTA Allocable Revenues have been preempted.

185.    Defendants assert security interests in HTA's right (if any) to receive HTA Allocable Revenues.

186.    An actual, substantial, and justiciable controversy exists between HTA and Defendants concerning the validity, priority, extent and enforceability of the security interests asserted in HTA's property.

187.    HTA is entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that any rights HTA may have once had to receive HTA Allocable Revenues have been preempted by PROMESA and that, as a result, Defendants do not hold security interests in HTA's rights to receive the HTA Allocable Revenues.

188.    Pursuant to Bankruptcy Code section 502(a), HTA is entitled to an order disallowing claims to such security interests.

## **COUNT X**

**DECLARATORY JUDGMENT THAT ANY SECURITY INTEREST IN HTA'S REVENUES OR HTA'S RIGHT TO RECEIVE REVENUES GRANTED DEFENDANTS NO LONGER ATTACHES TO RIGHTS TO RECEIVE REVENUES ARISING AFTER THE PETITION DATE UNDER BANKRUPTCY CODE SECTION 552 AND ORDER DISALLOWING CLAIM TO SUCH SECURITY INTERESTS**
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502(a), 552)

189.    Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

190.    Pursuant to Bankruptcy Code section 552(a), "except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a).

191.    To the extent HTA receives or received any Revenues during the postpetition period, such revenues constitute "property acquired by the estate . . . after the commencement of the case" and, therefore, any valid and perfected security interest in Revenues does not attach to such Revenues.

192.     If any purported security interests attach to HTA's rights to receive any Revenues, any such rights to receive Revenues that arose following the filing of the petition constitute "property acquired by the estate . . . after the commencement of the case" and, therefore, any valid and perfected security interest in such rights to receive Revenues does not attach.

193.     Defendants assert continuing security interests in Revenues.

194.     An actual, substantial, and justiciable controversy exists between HTA and Defendants concerning the validity, priority, extent and enforceability of the security interests asserted in HTA's property.

195.     Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that Bankruptcy Code section 552(a) prevents any security interest from attaching (*i*) to Revenues received by HTA during the postpetition period or (*ii*) rights to receive Revenues arising during the postpetition period.

196.     Pursuant to Bankruptcy Code section 502(a), Plaintiffs are entitled to an order disallowing claims to such security interests.

## COUNT XI

**JUDGMENT DISALLOWING ALL CLAIMS ASSERTING SECURITY INTERESTS
EITHER NOT GRANTED TO DEFENDANTS OR THAT ARE UNPERFECTED UNDER
BANKRUPTCY CODE SECTION 502(a)**
(48 U.S.C. § 2161; 11 U.S.C. §§ 502(a))

197.     Plaintiffs repeat and incorporate by reference each allegation contained in the preceding paragraphs as if fully set forth herein.

198.     Defendants assert security interests in (*i*) Revenues and other moneys not received by HTA, (ii) Revenues and other moneys received by HTA but not deposited with the Fiscal Agent in accounts held by the Fiscal Agent and (*ii*) HTA's right (if any) to receive Revenues.

199.    The Resolutions (if they grant security interests at all) and the 1998 Security Agreement do not grant security interests in anything other than Revenues both *received* by HTA and *deposited* with the Fiscal Agent in accounts held by the Fiscal Agent.

200.    Any security interests of Defendants in collateral other than Revenues both *received* by HTA and *deposited* in accounts with the Fiscal Agent in accounts held by the Fiscal Agent have not been perfected, and are unenforceable, subordinated to HTA's interests in such collateral under 19 L.P.R.A. § 2267(a)(2), and avoidable under Bankruptcy Code section 544(a).

201.    An actual, substantial, and justiciable controversy exists between HTA and Defendants concerning the validity, priority, extent and enforceability of the security interests asserted in HTA's property.

202.    Pursuant to Bankruptcy Code section 502(a), Plaintiffs are entitled to an order disallowing claims to such security interests.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray that judgment be entered for HTA and against Defendants as follows:

A.    Declaring that the Fiscal Agent and the 1968 Bondholders do not hold security interests in anything beyond 1968 HTA Revenues both received by HTA and deposited with the Fiscal Agent in the Sinking Fund;

B.    Declaring that the Fiscal Agent and the 1998 Bondholders do not hold security interests in anything beyond 1998 HTA Revenues both received by HTA and deposited with the Fiscal Agent in the Revenue Fund (and transferred to the 1998 Sinking Funds in accordance with the 1998 Resolution);

41

C.      Avoiding and preserving for the benefit of HTA any security interests of the Fiscal Agent or the 1968 Bondholders granted by the 1968 Resolution in any of HTA's deposit accounts that are not controlled by the Fiscal Agent (or funds credited to any such deposit accounts), pursuant to Bankruptcy Code sections 544 and 551;

D.      Avoiding and preserving for the benefit of HTA any security interests of the Fiscal Agent or the 1998 Bondholders granted by the 1998 Resolution and the 1998 Security Agreement in any of HTA's deposit accounts that are not controlled by the Fiscal Agent (or funds credited to such deposit accounts), pursuant to Bankruptcy Code sections 544 and 551;

E.      Declaring that, pursuant to 19 L.P.R.A. § 2267(a), HTA's interests in HTA's deposit accounts not held by the Fiscal Agent and in funds credited to such deposit accounts have priority over any security interests in such deposit accounts and such funds held by the Fiscal Agent or the Bondholders;

F.      Avoiding and preserving for the benefit of HTA any security interests of the Fiscal Agent or the 1968 Bondholders granted by the 1968 Resolution in HTA's right (if any) to receive Revenues, pursuant to Bankruptcy Code sections 544 and 551;

G.      Avoiding and preserving for the benefit of HTA any security interests of the Fiscal Agent or the 1998 Bondholders granted by the 1998 Resolution and the 1998 Security Agreement in HTA's right (if any) to receive Revenues, pursuant to Bankruptcy Code sections 544 and 551;

H.      Declaring that, pursuant to 19 L.P.R.A. § 2267(a), HTA's interests in HTA's right (if any) to receive Revenues have priority over any security interests of the Fiscal Agent and the Bondholders in such right;

I.      Declaring that any right of HTA to receive HTA Allocable Revenues has been preempted by PROMESA, and as a result neither the Fiscal Agent nor the Bondholders are

42

beneficiaries of security interests in HTA's (now preempted) right to receive HTA Allocable Revenues;

J.      Declaring that any security interests of the Fiscal Agent or the Bondholders in the Revenues or right (if any) to receive Revenues no longer attach to any Revenues received postpetition or rights to receive Revenues that arise postpetition, pursuant to Bankruptcy Code section 552(a); and

K.      Disallowing all claims to security interests herein avoided, preempted, and/or declared subordinate to HTA's status.


*[Remainder of page intentionally left blank]*

Dated: May 20, 2019
       San Juan, Puerto Rico

Respectfully submitted,

*/s/ Alberto G. Estrella*

*/s/ Kenneth C. Suria*

**ESTRELLA, LLC**
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P.O. Box 9023596
San Juan, Puerto Rico 00902-3596
Tel.: (787) 977-5050
Fax: (787) 977-5090
agestrella@estrellallc.com
kcsuria@estrellallc.com

*Local Counsel to the Special Claims Committee of
the Financial Oversight and Management Board,
acting by and through its members*

-and-

*/s/ Luc A. Despins*

PAUL HASTINGS LLP[18]
Luc A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel:  (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C. 20005
Tel:  (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors (except for
COFINA)*

---

[18] Due to circumstances outside of its control, and despite its best efforts, the Committee's counsel Paul Hastings LLP
was unable to finish a comprehensive conflicts review with respect to all defendants prior to the filing of this
Complaint.  The Committee's counsel reserves the right to withdraw from this action as to certain defendants
without prejudice to Plaintiffs if necessary to resolve any conflicts that may arise.

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Alberto J. E. Añeses Negrón, Esq. (USDC - PR 302710)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
aaneses@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of
Unsecured Creditors for all Title III Debtors
(except for COFINA)*